UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ARIA BREWER                                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:05-CV-377-S

CEDAR LAKE LODGE, INC.                                                                       DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on the motion of the Defendant, Cedar Lake Lodge ("Cedar Lake"), for summary judgment. Cedar Lake asserts it is entitled to summary judgment because the plaintiff, Aria Brewer ("Brewer"), has failed to make out a prima facie case for employment discrimination, or if she has, Cedar Lake has presented a legitimate, non-discriminatory reason for its decision not to promote Brewer, and Brewer has not been able to present sufficient evidence demonstrating this reason was a pretext for discrimination.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* At 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *See First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence

must be construed in a light most favorable to the party opposing the motion. *See Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

For the reasons set forth herein, we conclude that Cedar Lake is entitled to summary judgment.

## BACKGROUND

Brewer, an African-American woman, was hired in January 2001 as a Habilitation Aide by Cedar Lake, a non-profit corporation that provides an Intermediate Care Facility and comprehensive support services for individuals with mental retardation. In August 2003, Cedar Lake created and posted the opening of a new staff position, the Adult Day Program Aide ("ADPA"). The ADPA was to serve as an assistant to Frank Goodloe ("Goodloe"), who was Cedar Lake's Adult Day Program Coordinator. At this point Brewer had worked for Cedar Lake for about eighteen months, but had no experience as a Behavior Technician. A Behavior Technician receives additional on the job training and experience beyond that received by Habilitation Aides.[1]

Among those who applied for the ADPA position were Brewer and Stacey Sharp ("Sharp"), a Caucasian woman. Sharp had worked for Cedar Lake for over three years at the time she applied for the ADPA position and had sixteen months experience as a Behavior Technician. Goodloe was to interview the ADPA applicants and make his recommendation to Toni Crouch ("Crouch"), the Director of Resident Services and his supervisor. Crouch retained ultimate hiring authority.

---

[1] Although Brewer asserts in her Response that the only additional training received by Behavior Technicians is in Professional Crisis Management, in which Habilitation Aides are also trained, George Throne, Cedar Lake's resident Behavior Specialist responsible for training all Behavior Technicians, states otherwise in his affidavit. According to Throne, a Behavior Technician receives more training than a Habilitation Aide, and from his affidavit it appears that this additional training also goes beyond Professional Crisis Management.

- 2 -

Following the interviews, Goodloe and Crouch met to choose the ADPA. Goodloe recommended Brewer for the position. At some point during the meeting between Goodloe and Crouch, Crouch mentioned that hiring Brewer for the position might result in the appearance of reverse discrimination. She said something to the effect of "if Brewer is hired, people will say she was hired because she's black." Ultimately, Crouch selected Sharp for the position, allegedly based on her seniority and experience as a Behavior Technician.

Brewer eventually learned of Crouch's statement regarding reverse discrimination and filed a complaint with Cedar Lake. Cedar Lake investigated the claim and concluded that even though race had not been a hiring factor, it had still been inappropriately introduced into the selection process. Cedar Lake recommended that Sharp's selection be reversed and the position be reopened. Interviews were reconducted and Billy Hayden was hired as the new ADPA. Mr. Hayden also had more seniority than Brewer, as well as experience as a Behavior Technician.

Brewer also filed a complaint with the EEOC. The EEOC conducted its own investigation and concluded that Cedar Lake had failed to promote Brewer based on her race. Brewer subsequently filed this lawsuit alleging that Cedar Lake had unlawfully discriminated against her and thereby violated Title VII and the Kentucky Civil Rights Act.[2]

## ANALYSIS

In order to prove her case of employment discrimination, a plaintiff must present either direct evidence of discrimination or circumstantial evidence to create an inference of discrimination. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). But, rarely will a plaintiff be able to provide direct evidence of discrimination, since only the most blatant discriminatory remarks constitute direct discrimination. *See Smith v. Chrysler Corp.*, 155 F.3d

---

[2] Kentucky courts, as well as federal courts applying Kentucky law, turn to federal case law interpreting Title VII when addressing claims under the Kentucky Civil Rights Act, since the general purpose of that Act is to provide a vehicle under which federal anti-discrimination laws, such as Title VII, can be executed. *See* Ky. Rev. Stat. § 344.020(1)(a).

799, 805 (6th Cir. 1998) (stating that direct evidence "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'"); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997) (explaining that "[r]arely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available.").

Thus, it most often falls on the plaintiff to prove her case through circumstantial evidence utilizing the burden-shifting approach set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.3d2d 668 (1973). This approach employs a four-factor test, first articulated in *McDonnell Douglas* and subsequently modified by the Sixth Circuit to fit the specific discrimination alleged. *See White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). Under the test, a plaintiff establishes her prima facie case of discrimination by showing that:

1. She belongs to a protected group;

2. She applied for and was qualified for a job which the employer was seeking applicants;

3. That, despite her qualifications, she was rejected; and

4. After her rejection, the position remained open or went to a less qualified applicant who was not a member of the protected group.

*Farmer v. Cleveland Public Power*, 295 F.3d 593, 603 (6th Cir. 2002); *see McDonnell Douglas*, 93 S.Ct. at 1824; *but cf. White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 240-41 (6th Cir. 2005).

If the plaintiff is able to establish a prima facie case, then the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its decision not to hire or promote the plaintiff. Once it does so, the burden of going forward then shifts back to the plaintiff to show that the defendant's reason was actually a pretext to discriminate. *McDonnell Douglas*, 93 S.Ct. at 1824.

Here, Brewer has not been able to establish her prima facie case because of the fourth factor. Brewer admits that Sharp was at least equally qualified, and the facts demonstrate that Sharp had twice as much seniority as Brewer, plus sixteen months of experience as a Behavior Technician, while Brewer had none. Thus, Cedar Lake hired an applicant who was more qualified, at least on some aspects, than Brewer.

Brewer, however, argues that it is inappropriate to use the fourth factor as set forth by the Sixth Circuit in *Farmer v. Cleveland Public Power*, because *White v. Columbus Metro Housing Authority* abrogated *Farmer* when it stated the fourth factor only required that a *similarly-situated* (versus less-qualified) applicant who was not a member of the protected class have received the position. *See White*, 429 F.3d at 241. However, Cedar Lake is correct when it asserts that *White* was decided by a Sixth Circuit panel, and a subsequent Court of Appeals panel cannot abrogate a prior panel's decision. *See* 6th Cir. R. 206(c); *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1105 n2 (6th Cir. 1995) ("It is the well-settled law of this Circuit that "[a] panel of this Court cannot overrule the decision of another panel.") We believe *Farmer* correctly articulates the fourth factor. *Farmer* follows Supreme Court precedent, as well as Title VII, neither of which require that preference be given to a racial minority. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981).

However, even if *White* correctly sets forth the fourth factor, "similarly-situated" does not necessarily mean "equally qualified." Brewer and Sharp can be equally qualified yet differently situated. Here, the facts demonstrate that not only did Sharp have more experience and seniority than Brewer, but her experience was of a somewhat different nature since she and Brewer held different positions at Cedar Lake. Thus, we do not believe Brewer and Sharp were "similarly-situated". Yet, even if we were to further assume that "similarly-situated" actually meant "equally qualified" and that Brewer has proven she and Sharp were "equally qualified", Cedar Lake has still articulated a legitimate, non-discriminatory reason for hiring Sharp over Brewer: Sharp had

more seniority. Seniority has been found to be a legitimate, non-discriminatory reason for choosing one applicant over another. *See Hall v. Local 11*, 116 F.3d 1480, 2004 WL 359093 (6th Cir. June 27, 1997).

To move forward from this point, Sharp would have to show pretext on the part of Cedar Lake. She "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1083 (6th Cir. 1994). For Brewer to discredit Cedar's Lakes non-discriminatory reason, she must "show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [Cedar Lake's decision]…, or (3) that they were *insufficient* to motivate [Cedar Lake's decision]….'" *Id.* at 1084 (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)). However, Sharp is unable to make any of these showings.

We can easily dispense with the first and third showings. Under the first showing, Brewer would have to demonstrate that Sharp did not have more seniority. *See id.* At the time of her selection, however, Sharp had been with Cedar Lake twice as long as Brewer. Under the third showing, Brewer would have demonstrate that Cedar Lake did not typically utilize seniority as a basis for promoting employees or that seniority was only a minor factor. *See id.* Yet, Brewer has not even made this contention.

It is more difficult, however, to determine whether a plaintiff has made the third showing, since the third showing requires an examination of all the circumstantial evidence presented by the plaintiff. Under this showing, Brewer has to demonstrate that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* The circumstantial evidence presented by Brewer includes:

1. Crouch's statement allegedly made *prior* to selecting Sharp that promoting Brewer would cause others to think that she was promoted because she was black.

2. Crouch's allegedly inconsistent statements, where prior to the lawsuit she said that Brewer and Sharp were "basically equal", but later claimed Sharp had more experience and seniority.

3. Cedar Lake's posting for the position, which did not specifically state that experience as a Behavior Technician was required.

4. Goodloe's deposition testimony that he believed Brewer was the best candidate.

5. A letter written by Goodloe documenting his involvement in the hiring process, in which he states that he did not want to hire Sharp for the position.

6. Sharp's school schedule, which prevented her from working, Monday thru Friday, 8 am to 4 pm.

We do not believe, however, even upon viewing this evidence in a light most favorable to Brewer ,that Cedar Lake's explanation was "more likely than not" pretextual. First, although there is disagreement about whether Crouch mentioned Brewer's race prior to or following Sharp's selection, timing is irrelevant, since Crouch's statement regarding reverse discrimination is not necessarily indicative of racial discrimination. The Sixth Circuit has stated that isolated statements are "too abstract" and "cannot support a finding of racial discrimination." *Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003). Second, although as asserted by Brewer "inconsistencies…in the employer's proffered legitimate reason" could be "such that a reasonable person would find that the employer's explanation is unworthy of credence," we do not find Crouch's statements inconsistent. *Morgan v. Hiliti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). "Qualified" does not necessarily equate only "experience and seniority." It could be that Sharp and Brewer were equally qualified, with Sharp's qualification based more on her experience and seniority and Brewer's qualification based more on her dealings with clients and personality.

Third, it is true that the position positing did not state a requirement for Behavior Technician experience. However, in his deposition Goodloe testified that familiarity with the Behavior Technician position was advantageous, since the ADPA position would require periodic intervention with the program's participants. Furthermore, it is not our place to question the criteria utilized by an employer for its promotions, unless that criteria is somehow illegal. *See Hampton v. Norton Healthcare, Inc.*, 2004 WL 2595959 at *3 (W.D. Ky. June 24, 2004). Fourth, although in his deposition Goodloe testified that he believed Brewer to be the best candidate, and although in his letter Goodloe wrote that he did not want to hire Sharp, he also testified in his deposition that Sharp was more qualified by experience. Fifth, Brewer has been unable to show that the position required a regular work schedule, while Cedar Lake has shown that it encouraged its employees to further their education. Sixth, Cedar Lake promoted Mr. Hayden, an African-American man, to the ADPA position after it reopened the position and reconducted interviews.

Brewer has failed to meet her burden under the *McDonnell Douglas* framework, and therefore, we grant Cedar Lake's motion for summary judgment and dismiss this case with prejudice. A separate order will be entered this day in accordance with this opinion.